UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 1 3 2014

GEOVANY SERRANO, IGNACIO GAONA, JUAN
CARLOS MARTINEZ, RAUL POLANCO,
HIPOLITO R. RIVAS, JOSE L. RODRIGUEZ RIVAS,
and JOSE WILMER RIVAS, individually and on
behalf of all others similarly situated,

        Plaintiffs,

    v.

MAMAIS CONTRACTING CORP., THE TRUSTEES
OF COLUMBIA UNIVERSITY IN THE CITY OF
NEW YORK, STAVROULA MAMAIS-LORINO,
PETER MAMAIS, CHRIS TRIATOS and ANDREAS
STEFANAKIS,

        Defendants.

CIVIL ACTION NO.: 12-CV-6374

[~~REVISED PROPOSED~~]
**ORDER**

    The above-captioned matter came before the Court on Plaintiffs' Motion for Approval

of the Class Action Settlement, Named Plaintiffs' Service Awards, and Class Counsel's

Attorney's Fees and Expenses (the "Motion for Final Approval").

    Plaintiffs brought this action to recover unpaid overtime for themselves and all

individuals who were employed by defendant Mamais Contracting Corp. ("Mamais" or

"Mamais Contracting") for the six year period prior to the filing of the complaint. The

operative pleading, Plaintiffs' Second Amended Complaint, was filed on May 18, 2013. The

Second Amended complaint seeks to recover unpaid overtime and liquidated damages pursuant

to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor

Law Article 19, § 650 *et seq.* ("NYLL"). The Second Amended Complaint also alleges that

Mamais implemented post-commencement procedures for the receipt of paychecks which

constituted retaliation under the FLSA (29 USC § 215(a)(3)) and NYLL §215-1(a), and

required the performance of additional unpaid overtime in violation of the NYLL and the FLSA.

The Plaintiffs alleged joint-employer liability against Columbia University under the FLSA and the NYLL pursuant to *Walling v. Rutherford Food Corp.*, 156 F.2d 513, 516 (10th Cir. 1946) *aff'd as modified sub nom. Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947), *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 14 (2d Cir. 1984); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003). The Defendants vigorously contended that there was no employment relationship between the Plaintiffs and Columbia University, and that all claims against Columbia under the FLSA and the NYLL would eventually fail.

In October 2012 there were private settlement meetings between Class Counsel and Counsel for Mamais. As early as November 2012, Defendant Mamais Contracting produced volumes of wage and hour records for the approximately 250 employees who were employed by Mamais as construction workers upon the premises of Columbia University since August 20, 2006. These records purported to show the hours worked by each employee on a daily and weekly basis. In addition, Mamais produced computerized records containing wage information for all class members. Finally, counsel for Mamais also produced, subject to a confidentiality agreement, tax returns and net worth statements of Peter Mamais, Stavroula Mamais-Lorino, and Mamais Contracting Corp.

Plaintiffs' counsel reviewed and analyzed the wage and hour information provided by the Mamais defendants and separately analyzed this information using complex excel spreadsheets. The spreadsheets were used to calculate the unpaid overtime owed by Defendant Mamais Contracting to the class members. In addition, Plaintiffs' counsel solicited

from the Class Representatives and various proposed settlement class members pay stubs and other documents, and conducted extensive interviews of the Plaintiffs and several proposed class members. This information was used to verify the records produced by Defendant. No substantial discrepancies were found.

On May 22, 2013, all parties appeared for Court Mediation before Magistrate Judge Cott. During the Court Mediation, the parties were permitted to present their respective claims and defenses, and were permitted to present damage estimates and calculations to the court. At the conclusion of the mediation, which lasted almost 6 hours, the parties tentatively agreed to a settlement which called for the payment of $850,000.00 by Mamais Contracting. After mediation the parties diligently continued to hammer out the details of the settlement. After many revisions, the parties finally agreed to a settlement agreement, the substantive terms of which are as follows:

- The Defendant Mamais will pay the total settlement amount, or $850,000 ("Total Settlement Amount") as follows: an initial payment of $350,000.00, followed by yearly installments of $166,666.67 per year payable on the first, second and third anniversaries of the initial payment;

- The future settlement payments will be securitized by liens upon the residences of members of the Mamais family in consideration of the release of claims against Columbia;

- Settlement class members, without having to file a proof of claim, will receive an award based upon the amount of unpaid overtime hours each employee worked during the class period; Class members entitled to less than $25 because of their brief period of employment will be entitled to a minimum payment of $25;

- Members of a subclass defined as all individuals employed by Mamais contracting between September 17, 2012 and April 7, 2013 will each receive a payment of $75;

- Class Counsel will be reimbursed for costs and expenses up to $15,000;

- Class Counsel, on behalf of the class representatives, will be permitted to apply for incentive awards of up to $25,000 for Geovany Serrano, and up to $20,000 for the remaining six class representatives;

- The parties will be permitted to separately brief the issue of the tax treatment of the incentive awards (i.e. are they wages subject to withholding), which will be decided by the Court;

- Class Counsel will be paid from the Total Settlement Amount a $255,000 fee, or 30% of the amount recovered.

- After subtracting the amounts the Court allows for incentive payments, counsel fees and expenses, and the $75 payments to subclass members, the Net Settlement Amount will be divided among the Settlement Class on a pro-rata basis to how much underpaid overtime each Settlement Class member worked during the Class Period. Each class member will receive an amount equal to the Net Settlement Amount multiplied by the percentage of the total underpaid overtime he worked of the total underpaid overtime of all Settlement Class members, which percentages are set forth in Exhibit C to the Agreement. Of these amounts, half is deemed Wages, from which Mamais will withhold relevant taxes, and the other half is deemed interest and liquidated damages.

- This action, as against Columbia, will be dismissed with prejudice ten (10) days after the Effective Date, providing that the First Installment has been paid in full. If

an appeal is taken from this Order, then the action will be dismissed with prejudice as against Columbia the day after the Order is affirmed on appeal.

October 15, 2013, the Court preliminarily approved the proposed settlement, conditionally certified the Settlement Class and Settlement Subclass under Rule 23(e), finding that requirements of Fed.R.Civ.P. 23(a) and (b)(3) had been met, and approved the Notice of Class Action Lawsuit, Settlement and Fairness Hearing, pursuant to Fed.R.Civ.P. 23(c)(2)(B).

Pursuant to that Order, on October 23, 2013, Class Counsel mailed the Notice. See Mocerino Decl. ; Moser Decl. . Fifteen of the 253 notices were returned as undeliverable. Class Counsel was able to obtain updated addresses and successfully mail notice to all but five class members.   In addition, in an attempt to reach these five individuals, Class Counsel caused a notice to be published in the New York Observer.   Class members had 45 days to opt-out and to object to the settlement.  No one objected to or opted out of the class.

Based upon an examination of the Settlement Agreement, the Declaration of Steven J. Moser dated December 23, 2013 and the exhibits annexed to thereto, the Declaration of Linda Mocerino dated December 18, 2013 and the exhibits annexed thereto, the Declarations of Geovany Serrano, Ignacio Gaona, Juan Carlos Martinez, Raul Polanco, Hipolito R. Rivas, José L. Rodriguez Rivas and José Wilmer Rivas all dated December 8, 2013, and the accompanying Memorandum of Law,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

## I. THE COURT'S OCTOBER 15, 2013 ORDER CONDITIONALLY CERTIFIED THE SETTLEMENT CLASS AND THE SETTLEMENT SUBCLASS.

1.    Pursuant to its October 15, 2013 Order The Court conditionally certified the following class under Fed.R.Civ.P.23(e), for settlement purposes ("Settlement Class"): All individuals who were employed by defendant Mamais Contracting Corp. ("Mamais

Contracting") as non-exempt construction workers assigned by Mamais to work for at least a portion of their work time at any building owned or operated by Columbia at any time between August 21, 2006 and April 7, 2013 (the "Class" or "Class Members"). The Court also conditionally certified the following Subclass under Fed.R.Civ.P. 23(e) for settlement purposes ("Settlement Subclass"): All individuals who were employed by Mamais Contracting as non-exempt construction workers assigned by Mamais to work for at least a portion of their work time at any building owned or operated by Columbia at any time between September 17, 2012 and April 7, 2013 who were required to sign weekly time slips (the "Subclass" or "Subclass Members").

2.      The Court conditionally certified the Settlement Class and the Settlement Subclass on the basis that Plaintiffs met all of the requirements for class certification under Fed.R.Civ.P.23(a) and (b)(3).

3.      Plaintiffs satisfy Fed.R.Civ.P.23(a)(1) because there are more than 250 Class Members and more than 100 Subclass Members and therefore joinder is impracticable. *See Consol. Rail Corp. v. Town of HydePark,* 47 F.3d 473, 483 (2d. Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.")

4.      Plaintiffs satisfy Fed.R.Civ.P.23(a)(2), the commonality requirement, because Plaintiffs and the Class Members share common issues of fact and law, including whether Mamais Contracting failed to pay Plaintiffs and the Class Members for all of the overtime they worked, and whether Mamais Contracting retaliated against Subclass Members. *See Prasker v. Asia Five Eight LLC,* 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010); *Reyes v. Buddha-Bar NYC,* 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2001); *Mohney v. Shelly's Prime Steak Stone Crab & Oyster Bar,* 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009).

5.      Plaintiffs satisfy Fed.R.Civ.23(a)(3), the typicality requirement, because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' and Subclass Members' claims. *See Prasker v. Asia Five Eight LLC, supra,* 2010 WL 476009, at *2; *Reyes v. Buddha-Bar NYC, supra,* 2009 WL 5841177, at *2; Mohney, supra, 2009 WL 5851465, at *3.

6.      Plaintiffs satisfy Fed.R.Civ.P. 23(a)(4), the adequacy requirement, because Plaintiffs' interests are not antagonistic or at odds with Class Members or Subclass Members. *See Diaz v. Eastern Locating Services, Inc.,* 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010); *Prasker v. Asia Five Eight LLC, supra*, 2010 WL 476009, at *2; *Toure v. Cent. Parking Sys.,* 2007 WL 2872455, at *4 (S.D.N.Y. Sept. 28, 2007).

7.      Plaintiffs also satisfy Rule 23(b)(3).  Common factual allegations — that Mamais contracting failed to pay Class Members for all overtime they worked and retaliated against Subclass Members — and a common legal theory — that the Mamais Defendants violated the FLSA and NY Labor Law — predominate over any factual or legal variations among Class Members. *See Diaz, supra*, 2010 WL 2945556, at *2; *Prasker v. Asia Five Eight LLC, supra,* 2010 WL 476009, at *2; *Reyes v. Buddha-Bar NYC, supra,* 2009 WL 5841177, at *3; *Mohney, supra,* 2009 WL 5851465, at *4.  Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members and Subclass Members, particularly those who lack the resources to bring their claims individually. *See Diaz, supra*, 2010 WL 2945556, at *2.

**II. FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

8.      The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and in this Order under Rule 23 and the

FLSA. The Settlement is fair, reasonable, adequate, and not a product of collusion. *See* Fed.R.Civ.P. 23(6); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).

9.      Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed.R.Civ.P. 23(e). The FLSA also mandates court approval of any settlement. *See Latacela v. Cohen*, No. 10 CV. 4653(RJH), 2010 WL 3911463 at *1 (S.D.N.Y. Oct. 5, 2010).

10.     To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Matheson v. T-Bone Rest., LLC*, 09 CIV. 4214 DAB, 2011 WL 6268216 at *4 (S.D.N.Y. Dec. 13, 2011) (quoting *Wal–Mart v. Visa,* 396 F.3d at 116).

**Fairness**

11.     "Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.,* No. 04 Civ. 09194(CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov.30, 2010) (quoting *Wal–Mart v. Visa,* 396 F.3d at 116).

### *The settlement is procedurally fair.*

12.     To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal–Mart v. Visa,* 396 F.3d at 116; *D'Amato v. Deutsche Bank,* 236 F.3d at 85. "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery.'" *Matheson v. T-Bone Rest., supra*, 2011 WL 6268216 at *4 (quoting *Wal–Mart v. Visa,* 396 F.3d at 116).

13.     Here, the class is represented by experienced counsel.   Steven J. Moser was admitted to and has been a member in good standing of the bar of the state of New York since 1997.   He has represented plaintiffs in a wide variety of employment matters, and focuses almost exclusively on wage and hour litigation in the Eastern District of New York on both an individual basis as well as well as in collective and class action contexts.   He has served as counsel in consumer class action and other complex litigation and has successfully represented hundreds of individuals in wage and hour claims.   James J. Keefe was admitted to practice in New York State on January 27, 1971, and has been in good standing since that date.   He was admitted to practice in the Southern and Eastern Districts of New York in 1974 and to the bar of the Second Circuit Court of Appeals in 1975.   He has tried numerous cases to verdict in federal and state trial courts and has argued appeals in both federal and state appellate courts.

14.     The settlement was reached only after Plaintiffs' counsel had conducted a thorough investigation and evaluation of the claims, and after legal memoranda were exchanged and extensive negotiations between the parties had taken place. Plaintiffs' counsel undertook a detailed analysis of Defendant Mamais' payroll information including developing complex charts and formulae to calculate the amount of overtime worked under different scenarios.

15.     Counsel thoroughly researched the applicable law and investigated the factual basis of the Plaintiffs' claims against the Defendants herein.   Class Counsel invested significant resources to achieve a favorable result for the class.   Plaintiffs' counsel has painstakingly reviewed and analyzed thousands of documents provided by the Defendants pursuant to a confidentiality agreement.   Plaintiffs' counsel analyzed payroll information using

complex Excel spreadsheets, and cross referenced information provided by Plaintiffs to verify the accuracy of the documents. Before the Court Mediation which resulted in a settlement, Plaintiffs' counsel comprehensively analyzed the strengths and weaknesses of their position. And the final settlement negotiations were conducted and finalized under the supervision of Magistrate Judge James L. Cott.

### *The settlement is substantively fair.*

16.     "Courts of the Second Circuit examine the well-established '*Grinnell* factors' to determine whether a settlement is substantively fair and reasonable as required by Rule 23(e)." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 246 F.R.D. 156, 166-67 (S.D.N.Y. 2007).

17.     The factors that a district court considers are: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 86 (2d Cir.2001) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). All of the *Grinnell* factors weigh in favor of approval.

18.     Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

19.     The class's reaction to the settlement was positive.  Each Notice included an

explanation of the settlement and an estimate of the Class Member's award.  The Notices also

informed Class Members that they could object to or exclude themselves from the settlement,

and explained how to do so.  Of the 253 notices mailed out, no Class Member objected to the

Settlement or requested exclusion.  When relatively few opt-out or object to the settlement, the

lack of opposition supports approval.  *Maley v. Del Global Technologies Corp.*, 186 F. Supp.

2d 358, 362 (S.D.N.Y. 2002)("It is well-settled that the reaction of the class to the settlement is

perhaps the most significant factor to be weighed in considering its adequacy.").  "A favorable

reception by the class [thus] constitutes 'strong evidence' of the fairness of a proposed

settlement and supports judicial approval." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 07 CIV.

2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)(citing *Grinnell,* 495 F.2d at 462).

20.     The parties have completed enough investigation to agree on a reasonable

settlement.  Although the parties have not engaged in formal discovery, such is not required for

settlement to be adequate.  *Maley,* 186 F. Supp. 2d at 363.  Instead, "the question is whether the

parties had adequate information about their claims." *In re Global Crossing Sec. & ERISA

Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004).  Here, the Plaintiffs requested and Defendants

produced pursuant to a confidentiality agreement, voluminous wage and hour records and

financial information regarding Mamais Contracting and its principals.  Class Counsel was also

able to obtain voluminous records regarding Columbia University's practices and procedures

from the University's website.  Class Counsel also was able to speak with several former

employees of Mamais contracting to investigate the Defendants' pay practices and the nature of

the relationship between Columbia University and Mamais.  The stage of these proceedings,

where the parties have conducted sufficient informal discovery to fully understand the claims and settle without incurring undue costs - weighs in favor of approval.

21.    The fourth *Grinnell* factor, the risks of establishing liability, also weighs in favor of settlement.  A significant factor in reaching this settlement has been an evaluation of the likelihood of prevailing against Columbia University as a "joint employer".  In arguing their case for joint employer liability, Plaintiffs intended on relying on *Walling v. Rutherford Food Corp.*, 156 F.2d 513, 516 (10th Cir. 1946) *aff'd as modified sub nom. Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947), *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 14 (2d Cir. 1984); and *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71 (2d Cir. 2003).  The Defendants vigorously contended that there was no employment relationship between the Plaintiffs and Columbia University, and that all claims against Columbia under the FLSA and the NYLL would eventually fail.

22.    Whether a joint employment relationship exists is an extremely "fact-intensive" inquiry.  *Zheng.*, 355 F.3d at 76.  Indeed, leading Second Circuit decisions have been the result of appeals from judgments following trials.  *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999); *Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir. 1988).

23.    And while "the Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer" (*Herman v. RSR*, at 139 (citing *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973)) recent decisions have shown that it is not always wise to test the limits of the joint employer doctrine.  *See e.g. Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111 (S.D.N.Y. 2011); *Grenawalt v. AT & T Mobility, LLC*, 937 F. Supp. 2d 438 (S.D.N.Y. 2013); *Godlewska v. HDA*, 916 F. Supp. 2d 246 (E.D.N.Y.

2013); *Lawrence v. Adderley Indus., Inc.*, CV-09-2309 SJF ETB, 2011 WL 666304 (E.D.N.Y. Feb. 11, 2011).

24.     Columbia has already once moved to dismiss a prior version of the Complaint in this matter.  That motion was withdrawn without prejudice.  Columbia has advised that in the absence of a settlement, it will again move to dismiss.  Even if the Plaintiffs successfully defend that motion, they would still have to pursue the joint employer claims at trial.  This may be counterproductive.  If the cost of litigation effectively leaves  Mamais without funds to pay any judgment, the trial may be reduced to an "all-or-nothing" claim against an alleged joint employer with the good faith basis and the means to pursue available appellate remedies.  It has been observed that "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re PaineWebber Ltd. P'ships. Litig.*, 171 FRD 104, 126 (S.D.N.Y. 1997).   These risks of litigation weigh in favor of settlement.

25.     The fifth *Grinnell* factor, the risk of establishing damages, further weigh s in favor of final approval.  Even if Plaintiffs establish liability, they still face the "substantial risks in proving [its] damages at trial." *In re Painewebber Ltd. P'ships. Litig.*, 171 F.R.D. at 128. One purpose of a settlement "is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F.Supp. 917, 934 (S.D.N.Y. 1969).  Here, the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses presents risk. The settlement eliminates this uncertainty. The fifth *Grinnell* factor weighs in favor of final approval.

26.     The risk of maintaining class status throughout trial also weighs in favor of final approval.  A contested class certification motion would likely require extensive discovery and briefing.  If the Court granted a contested class certification motion, Defendants could seek to

file an appeal and/or move to decertify, which would require additional rounds of briefing and extensive delay. *See Glover v. Crestwood Lake Section 1 Holding Corp.,* No. 89 Civ. 5386 (MLJ), 1991 WL 64172 at *6 (S.D.N.Y. Apr. 10, 1991). *See also D.S. v. New York City Dept. of Educ.*, 255 F.R.D. 59, 78 (E.D.N.Y. 2008)("the risk that the class or subclass may be decertified generally Weighs in favor of settlement"). In addition, the Supreme Court's recent decisions in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013), and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) have, at the very least, introduced uncertainty into the class certification process. Settlement eliminates the risk, expense, and delay inherent in this process. The sixth *Grinnell* factor weighs in favor of final approval.

27.     Where a defendant's ability to withstand a greater judgment is in doubt, this weighs in favor of settlement. *Johnson v. Brennan*, 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. 2001). The fact that this settlement will be paid in four installments over the course of three years, and the fact that certain individual defendants have put up their personal residences as collateral for future payments is powerful evidence that the maximum financial benefit has been obtained for the class. Continued litigation thus places at risk funds which could be used to obtain financial justice for the class which would, instead, be unnecessarily expended by the Mamais defendants in litigation. Furthermore, if Mamais went out of business, it would be no consolation to a class member to forfeit his livelihood for a slightly larger settlement check.

28.     The amount of the Settlement weighs in favor of final approval. The court determines whether the settlement is in the "range of reasonableness," id., "a range which

recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation." *Wal-Mart v. Visa,* 396 F.3d at 96 (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).  The "settlement assures…payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'" *Gilliam v. Addicts Rehab. Cir. Fund.,* No. 05-Civ.-3452 (RLE), 2008 WL 782596 at *5 (S.D.N.Y. Mar. 24, 2008). "The enormous risks of litigation are why settlement is frequently preferred.  Settling avoids delay as well as uncertain outcome at summary judgment, trial and on appeal." *Maley*, 186 F. Supp. 2d at 366.  The Total Settlement Amount of $850,000 constitutes a substantial recovery in light of the attendant risks of litigation.

29.     Additionally, the following analyses weight in favor of settlement.

- Based on Plaintiffs' counsels' assessment, the Total Settlement Amount represents approximately 42.5% of the Settlement Class' recoverable damages under a "best possible case" analysis assuming, *inter alia*, (1) the Rule 23 classes were both certified; (2) the collective action was and remained certified; (3) meals were considered compensable work time (4) the Plaintiffs were able to prove that each member of the class was deprived of one hour of overtime per week based upon the "rounding" allegations; and (5) the Plaintiffs prevailed on all post commencement allegations in the Second Amended Complaint, including that each member of the subclass was entitled to $2,000 in liquidated damages based upon post-commencement check collection procedures.

- The Total Settlement Amount also represents approximately 143% of the recoverable damages, assuming (1) the Court were to rule that the lunch periods

were not compensable work time, (2) the Plaintiffs prevailed only on the

allegation that Mamais Contracting had failed to pay the class for non-Sunday

overtime at the overtime rate and (3) the class was awarded 100% liquidated

damages since the effective date of the New York Wage Theft Prevention Act

(April 9, 2011), and 25% liquidated damages for the remainder of the statute of

limitations.

30.     Thus the *Grinnell* factors strongly favor Settlement.  Although Plaintiffs might

recover more at trial, there are significant risks.  The Settlement commits a significant amount

of money to compensate Class members for their damages.  When this monetary relief is

weighed against the potential obstacles, substantial costs, and significant delay of further

litigation, the benefits to the Class of settlement are overwhelming. This conclusion is

confirmed by the absence of objectors and opt-outs.

**Dissemination of Notice Met Notice and Due Process Requirements**

31.     Pursuant to the October 15, 2013 Preliminary Approval Order, the Notices were

sent by first-class mail to each identified Class Member at his or her last known address. This

Court finds that the Notices fairly and adequately advised Class Members of the terms of the

settlement, as well as the right of Class Members to opt out of the class, to object to the

settlement, and to appear at the fairness hearing conducted on January 10, 2014. Despite

diligent efforts, addresses of five class members could not be located.   On December 11, 2013

Class Counsel caused to be published a notice regarding the settlement and the January 10,

2014 Fairness hearing.   Under the circumstances the class members were provided the best

notice practicable.  The Court further finds that the Notices and distribution of such Notices

comported with all constitutional requirements, including those of due process.

**Named Plaintiffs' Service Awards** 

$17,500

32.     The Court finds awards of $20,000 each to Ignacio Gaona, Jan Carlos Martinez,

$10,000

Raul Polanco, Hipolito Rivas, Jose Rodriguez Rivas and Jose Wilmer Rivas and $25,000 to

Geovany Serrano are reasonable and awards them. The Mamais Defendants shall pay these

amounts from the Settlement Fund.

33.     Such service awards are common in class action cases and are important to

compensate plaintiffs for the time and effort expended in assisting the prosecution of the

litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens

sustained by the plaintiff. *Castagna v. Madison Square Garden, L.P.*, 09-CV-10211 (LTS),

2011 WL 2208614. The incentive awards to the representatives are within the range of awards

granted in similar wage and hour lawsuits in both dollar amount ($20,000-$25,000) and in

terms of percentage of recovery (2.4%-2.9%). *see Matheson v. T-Bone Rest., LLC*, 09 CIV.

4214 DAB, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)(awarding service fees to a single class

representative of $45,000, or 9% of total settlement fund of $495,000); *Asare v. Change Grp.*

*of New York, Inc.*, 12 CIV. 3371 CM, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)(awarding

service payments of $8,000.00 to class representatives, or 4.8% of total settlement fund of

$165,765.01); *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164 (E.D.N.Y.

2012)(awarding $5,000 incentive award, or 3.7% of total settlement fund of $135,000)); *Willix*

*v. Healthfirst, Inc,* No. 07–Civ.–1143(ENV) (RER), 2011 WL 754862 (E.D.N.Y. Feb. 18,

2011) (approving incentive awards $30,000, $15,000, and $7,500 in FLSA claim to recover

unpaid overtime wages).

34.     In this case, the Named Plaintiffs expended considerable time and effort with

Class Counsel and were actively involved in the prosecution of this case. Further, service

awards are "particularly appropriate in the employment context . . [Where] the plaintiff is often a former or current employee of the defendant, and thus, undertakes the risk of adverse actions by the employer or co-workers." *Frank,* 228 F.R.D. at 187.

**Award of Fees to Class Counsel**

35.    In its October 15, 2013 Order, the Court appointed Steven J. Moser as Class Counsel.  The Court determined that Counsel met all of the requirements of Federal Rule of Civil Procedure 23(g).  *See Damassia v. Duane Reade Inc.,* 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (Rule 23(g) requires the court to consider "the Work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class" (internal quotation marks omitted)).

36.    In the Second Circuit, a district court may calculate reasonable attorney's fees in a class action settlement by either the percentage of fund method or the lodestar method. *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir.2010).   The trend in the Second Circuit is to use the percentage of fund method.  *McDaniel,* 595 F.3d at 417; *Wal-Mart v. Visa,* 396 F.3d at 121.

*Counsels fees are reasonable under the percentage of fund method.*

37.    Here, Plaintiffs' counsel requests $255,000.00 which is 30% of the settlement fund.  Reasonable, paying clients typically pay one-third of their recoveries under private contingent retainer agreements.  *Beckman v. KeyBank, N.A.*, 85 Fed. R. Serv. 3d 593 (S.D.N.Y. 2013)(citing *Reyes v. Altamarea Grp., LLC,* 10-CV-6451 RLE, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011).  In this case Class Counsel is requesting Attorneys' Fees amounting to  30% of

fund, less than the 33 1/3% provided for in the retainer agreement.   Class Counsel's requested

fee of 30% of the settlement fund is consistent with the norms of class litigation in the Second

Circuit.   *Beckman,* 85 Fed. R. Serv. 3d 593 ("Class Counsel's request for 33% of the Fund was

reasonable and consistent with the norms of class litigation in this circuit."); *See also Morris v.*

*Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611 (S.D.N.Y. 2012)(awarding Class Counsel 33

1/3% of $2.5 million fund in wage and hour litigation); *Johnson v. Brennan*, 10 CIV. 4712 CM,

2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)(awarding Class Counsel 33% of $435,600

settlement in FLSA settlement); *Willix v. Healthfirst, Inc.*, 07 CIV. 1143 ENV RER, 2011 WL

754862 (E.D.N.Y. Feb. 18, 2011)(approving counsel's request for 33 1/3 percent of

$7,675,000.00 fund in wage and hour case); *Mohney v. Shelly's Prime Steak Stone Crab*

*&Oyster Bar,* 06 Civ. 4270(PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31,

2009)(awarding fee of 33% of $3,265,000 fund in FLSA and NYLL case); *Duchene v. Michael*

*Cetta, Inc.,* No. 06 Civ. 4576 (PAC)(GWG), 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10,

2009) (awarding Class Counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip

misappropriation case); *Clark v. Ecolab, Inc.,* Nos. 07 Civ. 8623(PAC) et. al., 2010 WL

1948198 at *9 (S.D.N.Y. May 11, 2010)(awarding fees of one-third of the $2 million settlement

fund in an FLSA overtime case)

***Counsel's fees are also reasonable under a lodestar analysis.***

38.       The attorney's fees amount to a lodestar multiplier of 1.55, which is a relatively

low multiplier for settlement of a class action, measured by the range more recently awarded in

this district and others. *See In reTelik*, 576 F.Supp.2d 570, 590 (S.D.N.Y. 2008) ("In contingent

litigation, lodestar multiples of over 4 are routinely awarded by courts..."). The lodestar is

based on hourly rates of $350 for Steven J. Moser and $100 for paralegals, which the Court

finds reasonable in light of the fees charged in this District and Class Counsel's experience. Plaintiffs' counsel has submitted time records for review by the Court (Moser Declaration, Exhibits A & C), and the Court finds these records to be sufficiently detailed and reasonable 1n light of the time and effort put into this case.

### Counsel's Requested Attorney's Fees are Reasonable under the Goldberger Factors

39.     The *Goldberger* factors include (1) the time and labor expended by counsel, (2) the magnitude and complexities of the litigation, (3) the risk of the litigation, (4) the quality of representation, (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Wal-Mart v. Visa*, 396 F.3d at 121-22 (citing *Goldberger,* 209 F.3d at 50). The determination of a reasonable fee is left to the district court's "sound discretion." *Goldberger,* 209 F.3d at 47.

40.     The first *Goldberger* factor weighs in favor of awarding Counsel's requested attorney's fees. Counsel litigated this entire case from its investigatory state through settlement and this motion. The initial investigation included, *inter alia,* interviewing class representatives and witnesses, obtaining voluminous publicly available records, and performing online research.  Class Counsel then prepared the initial complaint, the first amended complaint, and the second amended complaint, interviewed potential witnesses and class members, met with counsel for Mamais Contracting for initial settlement negotiations, obtained and reviewed extensive wage and hour records, prepared the preliminary pretrial statement, attended the pretrial conference, prepared and served notices for the production of documents and interrogatories, prepared Plaintiffs' motion to conditionally certify a class pursuant to 29 U.S.C. § 216, retained a forensic expert to assist in ESI discovery, worked with investigators and the representative plaintiffs to continue to establish liability and identify witnesses, and

extensively researched the legal and factual issues surrounding the potential joint employer liability of Columbia University.  Class Counsel also prepared a confidential *ex parte* settlement statement which was submitted to Magistrate Judge Cott in anticipation of the settlement conference, and participated in the settlement conference.   Once the tentative settlement was reached, Class Counsel engaged in extensive negotiation with regard to the terms of the settlement agreement.   After the Settlement Agreement was finalized and executed, Class Counsel drafted the motion for preliminary class certification.  After the case was conditionally certified on October 15, 2013, Class Counsel diligently sought to fulfill the terms of the agreement, including securing future settlement payments with liens on the real property specified in the agreement, distributing notices to class members, and diligently attempting to provide the best notice to all class members.

41.    The "magnitude and complexity" of this case supports Counsel's fee request.

42.    The risks of litigation supports Counsel's fee request.  Due to the contingent nature of the case, Counsel risked substantial time and effort with no ultimate guarantee of compensation. Counsel took this case pursuant to a retainer agreement with the named Plaintiffs that provided for a fee only if Plaintiffs obtained a recovery.

43.    Counsel used their experience to obtain a substantial economic recovery for the class. Additionally, Counsel's quality is confirmed by the enormously positive response of the class where no class member objected to or opted out of the settlement.  This factor weighs in favor of granting the requested fee.

44.    The fee "is consistent with the norms of the class litigation in this circuit." *See Gilliam*, 2008 WL 782596 at *5.  In this Circuit, the "percentage-of-recovery" method is the "trend." *McDaniel*, 595 F.3d at 417.  Class Counsel's request for 30% of the Fund is reasonable

and "consistent with the norms of class litigation in this circuit." *See Cent. States Southeast &*
*Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care,* L.L.C., 504 F.3d
229, 249 (2d Cir. 2007) (affirming award of fees and costs equal to 30% of the settlement fund
($42.5 million)). Thus this factor weighs in favor of Court approval.

45.   In the wage and hour context, public policy favors a common fund attorneys' fee
award. *Morris v. Affinity Health*, 859 F. Supp. 2d at 622; *Willix v. Healthfirst, Inc.*, 07 CIV.
1143 ENV RER, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011). The Fair Labor Standards act is
both "humanitarian and remedial legislation"[1], the purposes of which are served by adequately
compensating attorneys who protect wage and hour rights. *Morris v. Affinity Health,* 859 F.
Supp. 2d at 623; *Reyes,* 2011 WL 4599822, at *7; *Willix,* 2011 WL 754862, at *6; *Sand v.
Greenberg*, 08 CV 7840 PAC, 2010 WL 69359 at *3 (S.D.N.Y. Jan. 7, 2010).

46.   Accordingly, the Court hereby grants Plaintiffs' Motion for Attorney's Fees,
finds counsel fees of $255,000 are reasonable and awards them to Steven J. Moser, P.C.
Mamais shall pay them from the Total Settlement Amount as specified in the Settlement
Agreement.

**Award of Costs to Class Counsel**

47.   The Court also awards Class Counsel reimbursement of litigation expenses in
the amount of $14,105.41, which the Court finds to be reasonable. "Attorneys may be
compensated for reasonable out-of-pocket expenses incurred and customarily charged to their
clients." *Toure v. Cent. Parking Sys.,* No. 05 Civ. 5237(WHP), 2010 WL 1572589, at *3
(S.D.N.Y. Mar. 26, 2007)(citations omitted). Here counsel has provided detailed records
documenting all costs. See Moser Declaration, Exhibits B &C. They are all reasonable,

---

[1] *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

incidental and necessary to the representation of the Class, and were within the $15,000.00 set in the settlement agreement.

## III. CONCLUSION

48.    Defendant Mamais Contracting Corp. shall pay the Total Settlement Amount in accordance with the terms of the Settlement Agreement.

49.    The Defendant Mamais Contracting shall also pay to Class Counsel attorney's fees of $255,000.00 and costs of $14,105.41 from the Total Settlement Amount in accordance with the terms of the Settlement Agreement.

50.    The Defendant Mamais Contracting shall also pay $25,000 to Geovany Serrano, and $20,000 each to Ignacio Gaona, Jan Carlos Martinez, Raul Polanco, Hipolito Rivas, Jose Rodriguez Rivas and Jose Wilmer Rivas as service awards from the Total Settlement Amount in accordance with the terms of the Settlement Agreement.

51.    Defendant Mamais Contracting shall pay the sum of $75 to each Subclass Members pursuant to the terms of the Settlement Agreement.

52.    Defendant Mamais Contracting shall pay Class Members who would receive less than $25 a minimum payment of $25 pursuant to the terms of the Settlement Agreement.

53.    Defendant Mamais Contracting shall then pay the balance of the Total Settlement Amount to Class Members as specified in the Settlement Agreement, based on Exhibit C thereto, which amounts shall be agreed to by Class Counsel, and shall distribute the Settlement Checks as described in the Settlement Agreement.

54.    Defendant Mamais Contracting shall satisfy its employer obligations to pay all applicable employer tax contributions associated with the Wage payments in the Settlement Checks.

55.     Plaintiffs' counsel shall provide defendant with all updated mailing addresses for Class Members and all W-4 forms that were sent in from Class Members.

56.     The "Effective Date" of the Settlement Agreement shall be 33 days from the date this order is entered or if appellate review is sought, the day after final affirmance on appeal.

57.     The First Installment of the Total Settlement Amount in the sum of $350,000.00 shall be paid by Mamais Contracting no later than ten days after the Effective Date.

58.     Class Counsel shall file the securitization documents identified in paragraph 10 of the Settlement Agreement with appropriate Clerks of the Counties in which the properties are located no later than ten days after the Effective Date.   Mamais shall pay for all reasonable and necessary costs related to filing, including, but not limited to, taxes and filing fees.

59.     Counsel for Mamais Contracting shall, upon payment of the First Installment of the Total Settlement Amount, submit to the Court an affidavit of compliance with the terms of this order, and a proposed order dismissing the claims against all defendants with prejudice.

60.     This action, as against Columbia, will be dismissed with prejudice ten (10) days after the Effective Date, providing that the First Installment has been paid in full.  If an appeal is taken from this Order, then the action will be dismissed with prejudice as against Columbia the day after the Order is affirmed on appeal.

61.     The Court retains jurisdiction over this action as may be necessary to administer the settlement.  The parties shall abide by all terms of the Settlement Agreement and this Order.

*The Clerk of Court is requested to close this case.*

New York, New York
Dated: January 13, 2014

_____
United States District Judge